Jennifer Seraphine, Esq.  (SBN: 245463)
*Jennifer.Seraphine@thompsonhine.com*
THOMPSON HINE LLP
155 Bovet Rd, Ste 600
San Mateo, CA 94402
T: (650) 265-6018

Doori C. Song, Esq.  (SBN: 334177)
*Doori.Song@thompsonhine.com*
THOMPSON HINE LLP
2049 Century Park East, Suite 3500
Los Angeles, California 90067
T: (310) 998-9100
F: (310) 998-9109

Attorneys for Defendant BLOCK, INC.

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER FLACK,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BLOCK, INC.<br><br>and<br><br>U.S. BANK, NA,<br><br>　　　　　　Defendants. | Case No. 3:25cv10927-TLT<br><br>**DEFENDANT BLOCK, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:　　　July 14, 2026<br>Time:　　　2:00 p.m.<br>Location:　Phillip Burton Federal Building,<br>　　　　　　Courtroom 9 - 19th Floor<br>　　　　　　450 Golden Gate Avenue,<br>　　　　　　San Francisco, CA 94102<br>Judge:　　Hon. Trina L. Thompson<br><br>Complaint Filed: December 23, 2025<br>Trial Date: April 17, 2028 |

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   PLAINTIFF MUST BE COMPELLED TO ARBITRATE HIS CLAIM ............................. 2

    A.    Plaintiff Did Not Effectively Opt Out of the TOS Arbitration Agreement. .............. 2

III.  THE COMPLAINT SHOULD ALTERNATIVELY BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................ 6

    A.    The CFPB Consent Order is Extrinsic Evidence That Cannot Be Considered on a Rule 12(b)(6) Motion. ................................................................. 7

    B.    The Complaint Fails to Allege a Qualifying "Account." ........................................... 9

        1.    The Transaction Documents Attached to Plaintiff's Opposition Do Not Cure the Complaint's Deficient EFTA Claim Against Block. ................ 9

        2.    The Opposition's Reference to Cash App's Website Does Not Establish a Qualifying EFTA Account. .......................................................... 10

    C.    The Complaint Fails to Allege a Qualifying "Access Device." ................................ 12

    D.    The Complaint Fails to Allege Adequate "Notice" of a Qualifying "Error." ........... 13

    E.    The Complaint Fails to Allege Any Defect in Block's Investigation. ...................... 14

IV.  CONCLUSION .................................................................................................. 15

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................................ 5

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
    674 F. Supp. 3d 884 (S.D. Cal. 2023) ................................................................ 14

*In re Block, Inc.*,
    No. 2025-CFPB-0001 (CFPB Jan. 16, 2025) .................................................... 7, 8

*In re Capital One Derivative S'holder Litig.*,
    2012 U.S. Dist. LEXIS 182301 (E.D. Va. Dec. 21, 2012) ................................... 8

*Chen v. Bank of Am., N.A.*,
    2019 U.S. Dist. LEXIS 232745 (C.D. Cal. Oct. 29, 2019) ................................ 14

*Ghalchi v. U.S. Bank, N.A.*,
    2015 U.S. Dist. LEXIS 201717 (C.D. Cal. Jan. 8, 2015) .................................. 14

*Kriegman v. Ponton*,
    2022 U.S. Dist. LEXIS 134419 (W.D. Wash. July 28, 2022) ............................. 8

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016) ................................................................... 4

*LeMoon v. Cal. Forensic Med. Grp., Inc.*,
    575 F. Supp. 3d 1212 (N.D. Cal. 2021) ............................................................... 1

*Loughlin v. Amerisave Mortg. Corp.*,
    2019 U.S. Dist. LEXIS 230194 (N.D. Ga. Nov. 12, 2019) ................................. 8

*Lumbus v. Huntington Bank*,
    2025 U.S. Dist. LEXIS 159345 (N.D. Ohio Aug. 18, 2025) .............................. 10

*Madinya v. Portfolio Recovery Assocs., LLC*,
    2018 U.S. Dist. LEXIS 160501 (S.D. Fla. Sep. 19, 2018) .................................. 8

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ............................................................................. 2

*Nelkin v. Kroto, Inc.*,
    2024 U.S. Dist. LEXIS 133926 (C.D. Cal. June 24, 2024) ................................. 4

*Roberts v. USAA F.S.B.*,
    2026 U.S. Dist. LEXIS 21134 (M.D. Fla. Feb. 2, 2026) ................................. 9, 10

*Roberts v. USAA F.S.B.*,
    No. 6:25-cv-886-JA-LHP, ECF No. 40 (M.D. Fla. Dec. 4, 2025) ...................... 10

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND
STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

*Saldate v. Apple Inc.*,
   2025 U.S. Dist. LEXIS 69465 (D. Ariz. Apr. 11, 2025)........................................................... 12

*Sanchez v. Navy Fed. Credit Union*,
   2023 U.S. Dist. LEXIS 142817 (C.D. Cal. Aug. 14, 2023) ...................................................... 15

*Sapan v. Safeway, Inc.*,
   2026 U.S. Dist. LEXIS 75058 (N.D. Cal. Apr. 6, 2026) ............................................................ 7

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998)................................................................................................... 6

*Sundahl v. Comerica Bank*,
   2026 U.S. Dist. LEXIS 8498 (S.D. Cal. Jan. 15, 2026) ...................................................... 13, 14

*Tian v. Bank of Am., N.A.*,
   2025 U.S. Dist. LEXIS 92638 (C.D. Cal. Apr. 2, 2025).......................................................... 14

*Uschold v. Carriage Servs.*,
   2020 U.S. Dist. LEXIS 62140 (N.D. Cal. Mar. 6, 2020) ........................................................... 1

*Valdez v. Wells Fargo Bank*,
   2025 U.S. Dist. LEXIS 158081 (D. Utah Aug. 14, 2025) .......................................................... 8

**Statutes**

15 U.S.C. § 1693a(2) ...................................................................................................................... 1

15 U.S.C. § 1693f(a) ....................................................................................................................... 2

15 U.S.C. § 1693f(b) .................................................................................................................. 1, 14

**Court Rules**

Local Rule 7-4(b) ............................................................................................................................ 1

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................ 1, 7, 9, 13

**Other Authorities**

12 C.F.R. § 1005.2(a)(1) ................................................................................................................. 1

12 C.F.R. § 1005.14 ...................................................................................................................... 13

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND
STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

Plaintiff Peter Flack ("Plaintiff") does not dispute that he agreed to the Cash App Terms of Service's ("TOS") binding arbitration agreement when he created his Cash App account in January 2022. Neither does he dispute that he failed to opt out within 30 days of account creation as required by the TOS. Instead, Plaintiff contends without legal support that subsequent opt-outs submitted under later TOS versions in March and April 2026—three to four months *after* he filed his Complaint and long after he stopped using Cash App—retroactively extinguish his original agreement to arbitrate. This argument fails for two independent reasons. First, Plaintiff never submitted an opt-out under the sign-up TOS. Second, Plaintiff never submitted a valid opt-out under the 2026 TOS versions that he claims govern this dispute because those versions were never "accepted" through continued use nor does Plaintiff provide any other evidence of contract formation for those TOS versions.

Furthermore, Plaintiff's attempt to cure the deficiencies in his 12-page Complaint by referencing over 500 pages of extrinsic documents is improper and should be disregarded. Not a single one of these documents is cited, referenced, or even mentioned in the Complaint. On a Rule 12(b)(6) motion, this Court should not look beyond the complaint to a plaintiff's moving papers. The Opposition's resort to this impermissible tactic is a tacit admission that the Complaint is deficient on its face and warrants dismissal on this threshold basis alone. Moreover, the Complaint still otherwise fails to state several elements of an EFTA claim against Block including (1) a qualifying "account" under 15 U.S.C. § 1693a(2); (2) a qualifying "access device" under 12 C.F.R. § 1005.2(a)(1); (3) adequate and timely "notice of error" under 15 U.S.C. § 1693f(a); or (4) a defective investigation under 15 U.S.C. § 1693f(b). Because the Complaint fails on each of these independently required elements, it should be dismissed with prejudice.[1]

---

[1] Plaintiff's request for leave to file an amended complaint should be denied as futile, and stricken as in violation of Local Rule 7-4(b) (limiting opposition briefs to "25 pages of text") because it appears on pages 26-27 of his brief. Courts in this District have stricken briefing that exceeds the page limit. *See LeMoon v. Cal. Forensic Med. Grp., Inc.*, 575 F. Supp. 3d 1212, 1229 (N.D. Cal. 2021); *Uschold v. Carriage Servs.*, 2020 U.S. Dist. LEXIS 62140, at *40 (N.D. Cal. Mar. 6, 2020).

Thompson Hine LLP
Attorneys at Law
Los Angeles

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

## II.   PLAINTIFF MUST BE COMPELLED TO ARBITRATE HIS CLAIM

### A.   Plaintiff Did Not Effectively Opt Out of the Arbitration Agreement.

The Opposition does not dispute that Plaintiff agreed to the TOS including its binding arbitration agreement when he created his Cash App account in January 2022. It is equally undisputed that Plaintiff did not opt out within 30 days of account creation. Indeed, Plaintiff concedes in his own declaration that he only "learned" about the opt-out opportunity *after* this litigation commenced. (*See* ECF No. 31 at 9.) Block's records confirm that no opt-out was received from Plaintiff within the applicable 30-day window. (*See* ECF No. 23 at 10.) Plaintiff's failure to timely opt out during this period is fatal to his opt-out argument. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210-11 (9th Cir. 2016) (recognizing time-limited opt-out provisions as enforceable where they provide a meaningful opportunity to reject arbitration).[2]

Plaintiff's sole argument is that he opted out following the February 23, 2026 and April 3, 2026 TOS updates, and that those opt-outs terminated his obligation to arbitrate. Critically, both of these purported opt-outs were submitted *after* Plaintiff filed his Complaint on December 23, 2025. This reveals the opt-outs for what they are: a litigation-driven tactic to avoid the binding arbitration agreement Plaintiff already consented to over four years earlier. Plaintiff's argument fails for two independent reasons: (1) the February and April 2026 TOS updates did not amend the arbitration agreement, so there was no new opt-out opportunity; and (2) Plaintiff never "accepted" the updated TOS versions, so no new contract was formed from which he could opt out.

***First***, Plaintiff's purported opt-outs are ineffective because the February and April 2026 TOS updates did not amend the arbitration agreement. The TOS permits customers to "reject *this provision*" (i.e., the arbitration provision) by submitting an opt-out "within thirty (30) days after

---

[2] When Block filed its Motion on April 9, 2026, Block had no record of any valid opt-out from Plaintiff. The two purported opt-outs Plaintiff now relies upon were submitted after Block's Motion was filed or while it was being prepared: (1) the first was postmarked March 16, 2026—not March 5, 2026 as the Opposition claims—and was not delivered until March 23, 2026 (ECF No. 30-3 at 2-3); and (2) the second was postmarked April 14, 2026, five days *after* Block filed its Motion (ECF No. 30-6 at 3). Neither opt-out applies to the TOS version in effect when Plaintiff created his account, and both are otherwise invalid for the reasons set forth in this Reply.

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND
STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

you create a Cash App Account, or for existing customers who agree to this as a terms update, within thirty (30) days of agreeing to such updated terms." (ECF No. 23-1 at 87; ECF No. 29 at 10.) The opt-out form reinforces this requirement: "The Opt-out Notice must be postmarked no later than . . . 30 days after the date we amended the Terms to provide you with the opportunity to opt out." (ECF No. 30-2 at 2.) The operative phrase "amended the Terms to provide you with the opportunity to opt out" unambiguously refers to amendments of the *arbitration provision itself*— the only "provision" that can be "reject[ed]" under this clause.

The opt-out right is expressly constrained to the arbitration agreement: the TOS language permits customers to "reject *this provision*," not to reject any other term in the TOS. It would be absurd to interpret the TOS such that an unrelated amendment—to, for example, the privacy policy or fee schedule—would trigger a renewed right to opt out of the *arbitration* agreement. The opt-out right exists to give customers a meaningful opportunity to reject arbitration when they first encounter it or when the arbitration agreement is amended; it does not exist to provide an indefinite escape hatch from arbitration every time Block updates an unrelated term in the TOS. A general TOS update that leaves the arbitration agreement unchanged does not trigger a new opt-out window because the customer has already had a meaningful opportunity to reject the arbitration agreement and declined to do so. This interpretation is consistent with the well-established principle that opt-out provisions must be strictly construed. *See Mohamed*, 848 F.3d at 1210. This window closed for Plaintiff in February 2022, 30 days after he agreed to the TOS including the arbitration agreement.

Plaintiff's opt outs of the February 23, 2026 TOS and April 3, 2026 TOS fail because neither version amended the arbitration agreement that Plaintiff agreed to, and did not opt out of, when he created his Cash App account in January 2022.  Indeed, the arbitration agreement was last updated on February 7, 2024—*over two years after Plaintiff created his account*—and Plaintiff did not opt out following that update either. (*See* Declaration of Doori C. Song ("Song Decl."), at ¶ 4.) Plaintiff thus had *two* opportunities to opt out over the years—under his sign-up arbitration agreement and under the amended February 2024 arbitration agreement—and declined to exercise either of them.

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

Although Plaintiff purports to have opted out following the February and April 2026 updates, those opt-outs are ineffective because those updates did not amend the arbitration agreement already in place in the February 2024 TOS version or the TOS version in effect when the alleged transactions occurred in December 2024. (*Id*., at ¶ 6.) To hold otherwise would allow any user to unilaterally revive a long-forfeited opt-out right simply by waiting for *any* TOS update which would render the 30-day limitation meaningless. Thus, Plaintiff remains bound to the TOS's arbitration agreement and should be compelled to submit his EFTA claim against Block to arbitration.

*Second*, Plaintiff's purported opt-outs are also ineffective because Plaintiff never "accepted" the February 23, 2026 or April 3, 2026 TOS versions. A party cannot opt out of a contract that never came into existence. Under basic contract law, an opt-out right presupposes the formation of a contract containing such a right—but here, no such contract was ever formed because Plaintiff never used the Cash App after those TOS updates. *See Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 893 (N.D. Ill. 2016) (granting motion to compel arbitration and rejecting opt-out argument after finding the plaintiffs had not "accepted" the terms containing the opt out provision because "the plaintiffs had not yet accepted the [updated] version of the agreement; thus, no contract had yet been formed from which they could opt out").

*Lee* is directly on point. As here, the plaintiffs in *Lee* sought to avoid arbitration based on purported opt-outs submitted after their complaint was filed following a TOS update. *Id.* The court rejected this argument because no contract had been formed from which the plaintiffs could opt out. *Id.* The same result is warranted here. Plaintiff, as the party seeking to enforce the February and April 2026 contracts, bears the burden of showing those contracts exist, and Plaintiff has offered no evidence of contract formation. *Nelkin v. Kroto, Inc.*, 2024 U.S. Dist. LEXIS 133926, at *4 (C.D. Cal. June 24, 2024) ("The party seeking to enforce a contract bears the burden of establishing the existence of the contract."). Specifically, Plaintiff has provided no evidence that he "accepted" the February 23 and April 3, 2026 TOS versions, which conditioned "acceptance" on "continued use" of Cash App's services. (ECF No. 30-4 at 11-12; ECF No. 30-7 at 11-12.) While

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

it is far from clear, to the extent Plaintiff is arguing that he "accepted" the February and April 2026 TOS versions by continuing to use his Cash App account, that argument must be rejected because Plaintiff stopped using his Cash App account in January 2025—more than a year before the TOS updates.[3] (*See* Declaration of Carly Braden ("Braden Decl."), ¶ 4.) Because Plaintiff never "accepted" the updated TOS versions through continued use, no new contract was formed from which he could opt out. The opt-out provisions confirm this result: "[T]o reject this agreement, you must send us an opt-out notice … for existing customers who ***agree*** to this as a terms update, within thirty (30) days of ***agreeing*** to such updated terms." (ECF No. 30-4 at 121; ECF No. 30-7 at 123) (emphasis added). This Court should thus reject Plaintiff's opt-out argument like the court did in *Lee*. *Lee*, 208 F. Supp. 3d at 893.

Plaintiff's contrary position, that a user can opt out of the arbitration agreement following any general TOS update, regardless of whether the arbitration agreement itself was amended or previously accepted without opting out, is contrary to the express terms of the TOS, impractical, and would frustrate the fundamental purpose of arbitration agreements. Under Plaintiff's theory, every minor change to the TOS unrelated to the arbitration agreement would retroactively supplant the arbitration agreement governing all pre-existing disputes and open a fresh 30-day window for every existing Cash App user to opt out of the arbitration agreement. The practical consequences of this interpretation would be untenable. The question of whether a user is bound by an arbitration agreement would depend on a rolling, perpetually shifting analysis: Did the user take any action constituting "agreement" to each successive update? If so, did the user submit an opt-out within exactly 30 days of that particular update? If yes but the user failed to opt out under the next update, did the arbitration agreement spring back into effect? This would transform arbitrability into a moving target—defeating the efficiency and predictability that arbitration agreements are designed to provide. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011).

---

[3] All TOS versions before January 2025 that Plaintiff "accepted" through account creation and continued use contained a binding arbitration agreement, and Plaintiff does not dispute that he never opted out of any of them.

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff's own counsel implicitly concedes the unworkability of Plaintiff's interpretation. In his declaration, Mr. Schlanger acknowledges that "[w]hile preparing this [Opposition], I became aware Block updated its terms yet again on April 27, 2026[,]" but states "I do not believe it is necessary for Mr. Flack to opt-out a third time." (ECF No. 30 at 3-4.) But if Plaintiff's reading of the opt-out provision were correct, then Plaintiff's failure to submit a third opt-out within 30 days of the April 27 update would mean he *re-consented to arbitration* under that version because under Plaintiff's theory, yet another contract formed on April 27, which resulted in Plaintiff entering into another arbitration agreement for which he indisputably did not opt out. Plaintiff cannot have it both ways: he cannot argue that the February 23 and April 3 updates each triggered a new opt-out right, while excusing himself from exercising that right following the April 27 update. Either every TOS update reopens the opt-out window, in which case Plaintiff's failure to opt out a third time is fatal, or the opt-out window for a preexisting dispute is not triggered by routine TOS updates unrelated to the arbitration agreement, which is Block's position.

For each of these independent reasons, Plaintiff's opt-out argument fails. Plaintiff had several meaningful opportunities to opt out of the arbitration agreement, but he declined to do so. Having foregone those opportunities, Plaintiff cannot now manufacture a retroactive opt-out right years after the fact simply because he decided to file suit. The Court should grant Block's Motion and either stay or dismiss this proceeding against Block pending arbitration.

### III. THE COMPLAINT SHOULD ALTERNATIVELY BE DISMISSED FOR FAILURE TO STATE A CLAIM

As explained below, the Opposition's improper reliance on extrinsic evidence and non-binding authorities cannot cure the Complaint's facial deficiencies. This Court is constrained to consider only the allegations within the four corners of the Complaint, and those allegations are fatally deficient. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The Opposition also fails to establish that the Complaint adequately alleges any of the elements essential to an EFTA claim: (1) a qualifying "account"; (2) a qualifying "access device"; (3) proper notice

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

of error; or (4) a defective investigation by Block. Because Plaintiff cannot satisfy any of these threshold requirements, the Complaint must be dismissed.

### A.  The CFPB Consent Order is Extrinsic Evidence That Cannot Be Considered on a Rule 12(b)(6) Motion.

The centerpiece of Plaintiff's Opposition is the CFPB's January 2025 Consent Order ("Consent Order")—a document that appears nowhere in the Complaint. Plaintiff asserts that Block "stipulated" to findings that the EFTA applies to Cash App and that Cash App qualifies as a financial institution holding consumer "accounts" under the EFTA. This argument fails for multiple independent reasons, each of which is dispositive.

*First*, as a threshold procedural matter, the Court cannot consider the Consent Order on this Rule 12(b)(6) motion because the Complaint does not cite, reference, incorporate, or even mention the Consent Order. Ninth Circuit precedent is clear: "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Id.* (emphasis in original). This principle has been consistently applied in this District. *See, e.g., Sapan v. Safeway, Inc.*, 2026 U.S. Dist. LEXIS 75058, at *4-5 (N.D. Cal. Apr. 6, 2026). The Consent Order is inapposite because the Complaint says nothing about the Consent Order: it does not cite or otherwise reference the Consent Order; it does not allege that the events at issue in the Consent Order relate in any way to the events at issue in the Complaint; and it does not provide any authority explaining why the Consent Order is controlling in this case. The Complaint's failure to include any of these allegations should foreclose the Court from considering the Consent Order while reviewing Block's Motion.

*Second*, even if the Court were to consider the Consent Order, it contains no binding admissions by Block. To the contrary, Block expressly disclaimed any admission of wrongdoing or liability. The Consent Order states that Block's consent was given "without admitting or denying any of the findings of fact or conclusions of law" and "without admitting or denying any wrongdoing." *See In re Block, Inc.*, No. 2025-CFPB-0001, at 3 (CFPB Jan. 16, 2025) (Consent

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

Order); Stipulation and Consent to the Issuance of a Consent Order, *In re Block, Inc.*, No. 2025-CFPB-0001, at 2 (CFPB Jan. 16, 2025). Courts have uniformly held that consent orders containing such non-admission language do not constitute "binding admission[s] by the signatories as to whether these violations occurred." *See In re Capital One Derivative S'holder Litig.*, 2012 U.S. Dist. LEXIS 182301, at *14-15 (E.D. Va. Dec. 21, 2012) (finding CFPB consent order did not include "binding admissions by the signatories as to whether these violations occurred" given that their stipulated consent was given "without admitting or denying the findings of fact or conclusions of law herein"); *Valdez v. Wells Fargo Bank*, 2025 U.S. Dist. LEXIS 158081, at *9-10 (D. Utah Aug. 14, 2025) ("Wells Fargo neither admitted nor denied 'any of the findings of fact or conclusions of law' in the Consent Order."); *Loughlin v. Amerisave Mortg. Corp.*, 2019 U.S. Dist. LEXIS 230194, at *63 (N.D. Ga. Nov. 12, 2019) (the court "cannot take judicial notice of disputed facts regarding Defendants' underlying liability for the claims resolved within the consent order" in part because the defendant "did not admit any of the findings of fact or conclusions of law" in the consent order).

*Third*, CFPB consent orders are not binding legal authority. Unlike regulations promulgated through formal rulemaking or adjudicative opinions, consent orders are "essentially settlement agreements" that do not bind federal courts. *Capital One*, 2012 U.S. Dist. LEXIS 182301, at *15; *Kriegman v. Ponton*, 2022 U.S. Dist. LEXIS 134419, at *3 (W.D. Wash. July 28, 2022) ("CFPB Consent Order is not controlling authority"); *Madinya v. Portfolio Recovery Assocs., LLC*, 2018 U.S. Dist. LEXIS 160501, at *14 (S.D. Fla. Sep. 19, 2018) ("[T]he Consent Order is not binding on this Court."). Indeed, numerous courts have declined to defer to CFPB consent orders while ruling on the merits of the parties' claims. *See Capital One*, 2012 U.S. Dist. LEXIS 182301, at *15; *Valdez*, 2025 U.S. Dist. LEXIS 158081, at *9; *Loughlin*, 2019 U.S. Dist. LEXIS 230194, at *63. This Court should do the same, particularly where, as here, the Complaint alleges no connection whatsoever between the events at issue in the Consent Order and Plaintiff's claims. *Valdez*, 2025

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

U.S. Dist. LEXIS 158081, at *9 (declining to defer to consent order because "the alleged misconduct in the Consent Order d[id] not significantly relate to Plaintiff's asserted claims").

For each of these independent reasons, the Consent Order cannot cure the Complaint's deficiencies and must be disregarded.

### B. The Complaint Fails to Allege a Qualifying "Account."

The Opposition advances two theories for why Plaintiff's Cash App account qualifies as an "account" under the EFTA: (1) that certain transaction documents demonstrate money was held in his Cash App account, and (2) that Cash App's TOS and website descriptions establish that Cash App accounts qualify under the EFTA. Both theories fail on procedural grounds because they rely on extrinsic evidence the Court cannot consider, and on substantive grounds because even if considered, they do not establish a qualifying EFTA "account."

#### 1. The Transaction Documents Attached to Plaintiff's Opposition Do Not Cure the Complaint's Deficient EFTA Claim Against Block.

The Opposition relies on transaction documents that are neither attached to nor incorporated in the Complaint to argue that Plaintiff's Cash App account qualifies under the EFTA. As with the Consent Order, the Court cannot consider these extrinsic documents on a Rule 12(b)(6) motion. *Schneider*, 151 F.3d at 1197 n.1. But even if they were considered, they affirmatively demonstrate that Plaintiff's Cash App account is *not* a qualifying EFTA "account."

The Opposition and transaction documents concede a critical fact: Plaintiff's Cash App account merely facilitated peer-to-peer transfers, and "all of the transfers" originated "out of Mr. Flack's U.S. Bank account[.]" (*See* ECF No. 29 at 14-15). In other words, Plaintiff's own evidence establishes that Cash App was merely a payment *conduit*—influencing or controlling certain payment processes between Plaintiff's bank account at U.S. Bank and third-party recipients—not a "holder" of an EFTA "account." Courts have consistently rejected such "operational control" theories. *See Roberts v. USAA F.S.B.*, 2026 U.S. Dist. LEXIS 21134, at *6 (M.D. Fla. Feb. 2, 2026) ("[A]ssertions of Apple's purported 'operational control' over certain payment processes [via

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

Apple Pay] do not amount to a plausible allegation that Apple is a holder of the account.") (citing *Tristan v. Bank of Am.*, 2023 U.S. Dist. LEXIS 111961, at \*33 (C.D. Cal. June 28, 2023)); *Lumbus v. Huntington Bank*, 2025 U.S. Dist. LEXIS 159345, at \*18 (N.D. Ohio Aug. 18, 2025) (finding that allegations of a defendant's "influence" and "control" over the fund removal process via Zelle did not sufficiently plead that the defendant holds an "account").

Nor can the Opposition salvage Plaintiff's EFTA claim by asserting that his Cash App account could receive "deposits," hold "balances," and "transfer funds out." In *Roberts*, the plaintiffs advanced an identical argument that their Apple Pay account qualified as an EFTA account because it held a "balance" of funds and facilitated transfers. *See Roberts v. USAA F.S.B.*, No. 6:25-cv-886-JA-LHP, ECF No. 40 at 8 (M.D. Fla. Dec. 4, 2025). The court rejected this theory, holding that such services did not demonstrate an EFTA "'account'—indirectly or otherwise." *Roberts*, 2026 U.S. Dist. LEXIS 21134, at \*5-6. The same outcome is even more warranted here given that the Complaint does not even allege that Plaintiff's Cash App account held a "balance" of funds. Because the Complaint fails to plausibly allege that Plaintiff's Cash App account is a qualifying EFTA "account", Plaintiff's EFTA claim against Block should be dismissed.

2. <u>The Opposition's Reference to Cash App's Website Does Not Establish a Qualifying EFTA Account.</u>

The Opposition again relies on extrinsic materials—screenshots of Cash App's website—to argue that Plaintiff's Cash App account qualifies under the EFTA. These materials are not referenced in the Complaint and cannot be considered. But even if considered, they do not establish a qualifying EFTA "account" and, in fact, undercut Plaintiff's position.

The screenshots depict only selectively chosen snippets taken out of context to create a distorted and misleading impression before the Court. For example, the Opposition cherry-picks language displaying hot words such as "Account," "Cash App Balance," and "send" and "receive funds," but blatantly cuts out qualifying language that these features "may be available ***only if you have a specific type of Account or you meet other eligibility requirements***":

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

| Opposition's Snapshot: | Full Snapshot: |
|---|---|
| **III. Cash App Account**<br><br>**1. Eligibility and Account Registration**<br><br>You must be a resident of the United States, at least 18 years and the age of majority in your State of residence, and you must register for an account (your "Account") to use the Service. Certain features of the Service may only be available for use in the United States.<br><br>**2. Cash App Accounts**<br><br>We offer four types of Accounts through the Service. The Cash App Terms govern your use of the Service regardless of the type of Account you have. Certain terms, as indicated | **III. Cash App Account**<br><br>**1. Eligibility and Account Registration**<br><br>You must be a resident of the United States, at least 18 years and the age of majority in your State of residence, and you must register for an account (your "Account") to use the Service. Certain features of the Service may only be available for use in the United States. Some features, such as the ability to send money to another Cash App customer with the balance in your Account, may be available only if you have a specific type of Account or you meet other eligibility requirements, such as providing us with certain information about you and we are able to verify your identity. We verify your identity on our own behalf and to facilitate certain of our partners, including First Electronic Bank and our other banking partners, in meeting their own obligations. |

(*Compare* ECF No. 29 at 17 (Opposition's Snapshot), *with* ECF No. 30-4 at 12 (Full Snapshot) (emphasis added).) Plaintiff's attempt to mislead the Court is emblematic of Plaintiff's futile efforts to salvage what he knows is a deficient EFTA claim against Block.

The snapshots and Opposition further fail to differentiate the features and limitations of Cash App's various account types including (1) "Restricted Accounts," (2) "Prepaid Accounts," (3) "Debit Flex Accounts," and (4) "Cash App Business Accounts." (*See* ECF No. 30-4 at 13-14.) Instead, Plaintiff's Opposition conflates the features of all account types to create the misleading impression that Plaintiff's account possessed the functionalities of all account types in an effort to make it look more like a qualifying EFTA account:

**2. Cash App Accounts**

We offer four types of Accounts through the Service. The Cash App Terms govern your use of the Service regardless of the type of Account you have. Certain terms, as indicated below, apply based on the type of Account you have and the Services you use. Your use of the Service may also be governed by additional agreements. Unless otherwise specified, the term "Account" or "Sponsored Account" in these Cash App Terms refers to your Account and any Sponsored Account, regardless of the type of Account.

**a. Restricted Account**

When you first open your Account, it will be a "Restricted Account", a limited functionality account. With a Restricted Account, you may use the following features: (i) connect a Linked Account to send funds to another Cash App customer (including a Cash App Business Account) using the Peer-to-Peer Service; (ii) receive funds to your Cash App Balance from another Cash App customer using the Peer-to-Peer Service; (iii) use your Cash App Balance and Linked Account for Cash App Pay purchases; and (iv) transfer funds from your Cash App Balance to your Linked Account.

**b. Prepaid Account**

Cash App offers a prepaid account ("Prepaid Account") that allows you to load, access and use funds in your Cash App Balance.

**c. Debit Flex Account**

Cash App offers a transaction account ("Debit Flex Account") that allows you to deposit, withdraw, and transfer funds to your Cash App Balance.

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

(ECF No. 29 at 17 (selectively highlighting the features in the various account types).)

Yet the Complaint does not allege which type of Cash App account Plaintiff holds or that his account possessed the functionalities of all four account types that Plaintiff's Opposition conflates. Instead, the Complaint merely alleges that Plaintiff's Cash App account "facilitate[d] sending and receiving money via peer-to-peer electronic fund transfers"—a function that courts have consistently held does not constitute an "account" under the EFTA. *See Roberts*, 2026 U.S. Dist. LEXIS 21134, at *6; *Lumbus*, 2025 U.S. Dist. LEXIS 159345, at *18; *Tristan*, 2023 U.S. Dist. LEXIS 111961, at *33-34. Because the Complaint fails to allege that Plaintiff had a qualifying EFTA "account" with Block,[4] the Complaint's EFTA claim should be dismissed.

### C.       The Complaint Fails to Allege a Qualifying "Access Device."

Relying yet again on extrinsic evidence, the Opposition asserts that Block publicly acknowledged that its electronic funds transfers are governed by Regulation E. Block made no such acknowledgment, and even if it had, such a statement would be irrelevant because it is not referenced in or incorporated into the Complaint. *Schneider*, 151 F.3d at 1197 n.1. The Opposition's continued reliance on extrinsic materials underscores the facial deficiency of Plaintiff's claim.

The Opposition also contends that Cash App provided a qualifying "access device" under Regulation E by providing a Cashtag, sign-in code, and app access when Plaintiff created his account. This argument fundamentally misapprehends the definition of "access device." Regulation E defines "access device" as "debit cards, personal identification numbers (PINs), telephone transfer and telephone bill payment codes, and other means that may be used by a consumer to initiate an electronic fund transfer (EFT) to or from a consumer account." *Saldate v. Apple Inc.*, 2025 U.S. Dist. LEXIS 69465, at *7 (D. Ariz. Apr. 11, 2025). The operative word is "initiate." The

---

[4] Plaintiff's quotation of Cash App's FAQ statement on its website that Cash App balances function "like" a bank account is also misleading because the same website expressly discloses that Cash App is "not an FDIC-insured bank." Plaintiff cannot selectively quote marketing materials while ignoring the legal disclosures on the very same platform that expressly disclaim bank status.

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

Complaint does not reference the access code, Cashtag, or sign-in code at all, let alone allege that they were used to *initiate* each transfer at issue. While the Opposition suggests these credentials were used to *create* Plaintiff's account, account creation is not the same as initiating an electronic fund transfer. Plaintiff therefore fails to allege a qualifying "access device" under Regulation E.

Furthermore, the Opposition fails to address, and thereby effectively concedes, that the Complaint does not allege the second element for a 12 C.F.R. § 1005.14 claim. Specifically, the Complaint does not allege that Block "[h]as no agreement with the account-holding institution regarding [] access" to Plaintiff's U.S. Bank checking account. *Saldate*, 2025 U.S. Dist. LEXIS 69465, at *9. The Complaint's failure to allege this element is independently fatal to Plaintiff's § 1005.14 claim. *See Roberts*, 2026 U.S. Dist. LEXIS 21134, at *7 (dismissing EFTA claim after finding that the complaint failed to allege whether the defendant had entered into an agreement for the provision of EFT services with a financial institution); *Tristan*, 2023 U.S. Dist. LEXIS 111961, at *36 (same). On this additional ground, Plaintiff's EFTA claim must be dismissed.

**D.      The Complaint Fails to Allege Adequate "Notice" of a Qualifying "Error."**

Plaintiff argues that the "notice" and "error" elements of his EFTA Claim are satisfied because the Complaint alleges he "disputed the $9,190.00 of unauthorized Cash App electronic fund transfers with Defendant Block" and provided "details" regarding the "theft." Once again, Plaintiff improperly supplements the Complaint's deficient allegations with extrinsic declarations and exhibits that the Court cannot consider on a Rule 12(b)(6) motion. *Schneider*, 151 F.3d at 1197 n.1. The Complaint must stand on its own allegations, and those allegations are fatally deficient.

The Complaint's sole allegation regarding notice to Block is that Plaintiff "disputed the $9,190.00 of unauthorized Cash App electronic fund transfers with Defendant Block." (*See* ECF No. 1 at ¶ 42). This conclusory allegation is insufficient as a matter of law because it does not support an inference that Plaintiff reported an "unauthorized electronic transfer" to Block. *Sundahl*

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -
DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND
STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

*v. Comerica Bank*, 2026 U.S. Dist. LEXIS 8498, at *9-10 (S.D. Cal. Jan. 15, 2026). A bare assertion that a plaintiff "disputed" transactions does not satisfy the EFTA's notice requirements. *Id.*

Moreover, the Complaint fails to allege critical facts necessary to establish adequate notice: (1) whether the notice was provided in writing or verbally; (2) what documentation first reflected the allegedly fraudulent transactions; and (3) when Plaintiff notified Block. Without these specific allegations, the Complaint does not plausibly allege that Plaintiff provided either adequate or timely notice. *Id.* at *10-11 (dismissing EFTA claim because complaint failed to allege "whether the dispute was written or verbal" and "when" the plaintiff notified defendants); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 906 (S.D. Cal. 2023) ("A complaint that doesn't allege that a consumer provided timely notice doesn't state a claim under the EFTA."); *Ghalchi v. U.S. Bank, N.A.*, 2015 U.S. Dist. LEXIS 201717, at *23-24 (C.D. Cal. Jan. 8, 2015).

### E.    The Complaint Fails to Allege Any Defect in Block's Investigation.

Plaintiff argues that the Complaint need not detail what Block did wrong, and need only allege that Plaintiff disputed the transactions and that Cash App "should have known" the transactions were inconsistent with Plaintiff's prior account use. This is not the law in this Circuit. Federal precedent in California requires the Complaint to allege specific facts establishing that the investigation was unreasonable or performed in bad faith. *See Sundahl*, 2026 U.S. Dist. LEXIS 8498, at *13-14 (dismissing EFTA claim under § 1693f and § 1693g for "fail[ure] to plead any facts about [defendant's] determination from which the Court may infer that [defendant's] obligations to correct the alleged error under § 1693f(b) were triggered or that [its] determination was wrong."); *Tian v. Bank of Am., N.A.*, 2025 U.S. Dist. LEXIS 92638, at *12 (C.D. Cal. Apr. 2, 2025); *Chen v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 232745, at *23 (C.D. Cal. Oct. 29, 2019). An EFTA claim should be dismissed if the complaint does not "identify[] any steps [Defendant] should have taken, but did not, or any 'relevant information' [Defendant] failed to consider" in

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

DEFENDANT BLOCK, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT

determining whether the EFTA covered the challenged transactions. *Sanchez v. Navy Fed. Credit Union*, 2023 U.S. Dist. LEXIS 142817, at *84 (C.D. Cal. Aug. 14, 2023).

The Complaint's conclusory allegations that Block "did not conduct a good faith investigation" and "did not have a reasonable basis for believing the account was not in error" are precisely the type of threadbare recitals of the elements that courts reject. The Complaint does not allege what steps Block should have taken but failed to take, what information Block purportedly ignored, or any other specific facts from which the Court could infer that Block's investigation was unreasonable or conducted in bad faith. Plaintiff's reliance on out-of-circuit cases from New York and Illinois is unavailing because he makes no attempt to explain why those cases should control or are more persuasive than the California authorities cited above that squarely govern this action. Accordingly, Plaintiff's EFTA claim against Block should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Block respectfully requests that the Court grant Block's Motion and enter an Order: (1) compelling Plaintiff to submit his claims to arbitration; or, alternatively, (2) either stay or dismiss with prejudice this action against Block pending completion of the arbitration.

Dated: June 1, 2026                          THOMPSON HINE LLP

By: */s/ Doori C. Song*
                                             Doori C. Song
                                             Jennifer Seraphine

Attorneys for Defendant BLOCK, INC.

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June, 2026, I caused a copy of the foregoing **DEFENDANT BLOCK, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT**; **DECLARATION OF CARLY BRADEN IN SUPPORT OF DEFENDANT BLOCK, INC.'S REPLY**; and **DECLARATION OF DOORI C. SONG IN SUPPORT OF DEFENDANT BLOCK, INC.'S REPLY** to be electronically filed with the Clerk of Court using the CM/ECF system, which constitutes service on the registered attorneys for all parties in the case.

/s/ Doori C. Song
Doori C. Song
Of Counsel

THOMPSON HINE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -